Mr. Dickey. May it please the court. And at the outset I'll say, as I did to Mr. Wee, note that you were appointed under the Criminal Justice Act. Yes. And we deeply appreciate your willingness to accept the assignment. Thank you. I'm glad to be of assistance. I'm from Dickey and Campbell Law Firm in Des Moines, Iowa, appearing on behalf of Harold Melbie, Jr. The District Court's application of the Armed Career Criminal Enhancement to Mr. Melbie's possession conviction was incorrect as a matter of law for three reasons. First, the 1986 state court burglary conviction. The government did not present sufficient documentation at the time of sentencing to allow the court to apply the modified categorical analysis as set forth in the Shepard decision. Second, the Armed Career Criminal Act and the judicial determinations of violated the Apprendi rule. And finally, the use of Mr. Melbie's state court drug offense from 1996 along with the 1998 federal conviction was incorrect as a matter of law because those two criminal acts did not occur on occasions different from one another. With respect to the first point, it doesn't appear that there's a disagreement anymore. The government on page nine of its brief concedes that it presented no documentation concerning the 1986 burglary conviction to allow the court to apply the modified categorical analysis. And maybe I need to address this to Ms. Jennings, but why is not the fact that you did trial counsel? I was appointed following trial for the purposes of sentencing. Okay. Well, as I understand it, you did not object to paragraph 28 of the pre-sentence report. In terms of the use of that as a qualifying predicate offense, in our sentencing memorandum, we did object to it. You did? Okay. Because it's not in the objections that are in the pre-sentence report. In the initial objections letter, we objected on a different ground. During the sentencing memorandum, we raised the issue concerning the lack of documentation. Subsequently, the probation officer provided state court documentation for the 1987 burglary conviction, but did not provide any documentation for the 1986 conviction. And at the time of sentencing, there was no dispute that the government did not present 1986 documentation. But if I read the decision from the district court, though, I thought he relied upon the 86 conviction as one of the predicates. He did. So there were four possible predicate offenses, the two burglaries and the two drug offenses. And the court, in its conclusion on the record, found that all four were applicable. The government essentially concedes on appeal that the 1986 conviction should not have been counted. So that leaves us with the 87 burglary conviction, which we do not dispute qualifies. And then our argument is that the state court offense from 1996 and the 1998 federal conviction are really the same offense for the purposes of the Armed Career Criminal Act. The law of this circuit, so setting aside the Almendores-Torres issue, the law in this circuit is, the standard is, whether or not the two offenses are separate and distinct, or whether they're part of a continuous course of conduct. And the Willoughby decision from 2011 sets forth three factors that would guide this court in its determination. The first factor is the time lapse between offenses. And what the record would establish is that the state court offense was the offense for which Mr. Melby was arrested and essentially punctuated the end of the federal conspiracy. So those two offenses occurred simultaneously as opposed to sequentially. The second factor that the Willoughby decision tells us to take a look at is the physical distance between the two occurrences. And again, what the record would show is that law enforcement executed a search warrant on September 16th, 1996. He was arrested for the state court possession with intent as a result of that search warrant. And that was also the same offense that punctuated his end of the federal court conspiracy. And the last thing is whether or not there is a substantive continuity to the two offenses. And we would submit that there was substantive continuity as opposed to, for example, what the government and what the district court essentially accepted in the Johnston decision. The Johnston decision from 2000 applied the relatedness analysis in the context of an 841B prior conviction determination. And in that case, what you had was a conspiracy that started, you had a state court arrest, and then the defendant in that case continued on at a later date to further the conspiracy. And that's not what we have here. What we have is essentially the Johnston decision turned on its head and that you had a conspiracy that started and then you had a state court offense that actually ended the conspiracy. So unlike Johnston, what you don't have is a situation where an individual commits a state court offense and then later rejoins the conspiracy. And so for that reason, we would suggest that the third factor of Willoughby, the continuity, that there is, for lack of a better word, no substantive discontinuity with respect to Mr. Melby's offenses. And so the court has several ways that it can grant Mr. Melby the relief that he seeks without even having to address the Amandores-Torres. The first is to distinguish factually Mr. Melby's situation, in this case between the factual situation and the Johnston decision. And we've set out an illustration in our brief as to how the court could do that. Additionally, if the court wanted to go further, although it's not necessarily required, the court could distinguish the Johnston decision by looking textually at the differences between 841B and 851 and 924E, the Armed Career Criminal Act. Textually, if you compare the two side by side, they're both reaching the issue of recidivism, but they use different language to get that. For example, in 841B, it focuses on the existence of prior convictions, whereas under 924E, it focuses on the actual offense conduct and requires a showing that the offense conduct occurred on occasions that were different from one another. Either way, we submit that Mr. Melby would be entitled to the relief, and that is to have this sent back down to the district court for resentencing without the application of the Armed Career Criminal Enhancement. To establish exactly why that's important, his base offense level was 24, criminal history category of four. Because of the Armed Career Criminal Enhancement, that was elevated to a level of 33, which gave him advisory guideline range in the range of 188 months on up. Without the Armed Career Criminal Enhancement, he's down at the 24 level, which gets him an advisory guideline range of 77 on up. So, the difference is pretty significant, and that's even prior to any 3553 analysis. So, for those reasons, we ask this court to approve this. We'll hear from the government. Ms. Jennings. Good morning. You may proceed. Morning. Your Honors, in this case, it's the government's position that the district court properly determined this defendant to be an armed career offender based on three convictions, the 1987 second degree robbery, the 1996 state conviction for possession with intent to distribute seven grams of methamphetamine, and the 1998 federal conviction for conspiracy to distribute methamphetamine. Just briefly, with respect to the burglary convictions on appeal, it's the government's position that, with respect to the issue of the modified categorical approach, that the government did not present the required documents so as to permit the court to find that the 1986 conviction counted as a predicate under that particular approach. The district court also has an internal alternative finding, which is not addressed in the briefs, but with respect to the modified categorical approach, that is the government's position with respect to the 1986 state burglary conviction. Turning next to the issue between the 1996 state conviction and the 1999 federal conviction, Mr. Dickey has tried to make- Would you lower the microphone just a little bit? Sure. Has tried to distinguish Johnston in this case, both on the facts and on the statute. It's the government's position that, in the instance of having an overarching conspiracy and a punctuated possession with intent within that conspiracy, there's no direct case law on point addressing that in terms of the ACC. However, there is direct case law addressing that issue when it comes to Section 851, and that's the Johnston case. And this court has already said that we can use the analysis and the terms of the Section 851 to address the issue under 924E. That case is the Plum case. Now, with respect to Johnston, this case is the Johnston case. The only difference that Mr. Melby is trying to point out is that the possession with intent to distribute in this case happened at the end of the conspiracy, whereas in Johnston, the possession with intent to distribute happened in the middle of the conspiracy. But there's no facts to support that there was a rejoining of the conspiracy in Johnston, like Melby is trying to argue in this case. In fact, in Johnston, if you read the case, it says that for the state conviction, the possession with intent to distribute, there was an allegation of conspiracy as a part of that as well, which wholly overlaps the federal conspiracy for which he was later convicted. And in Johnston, under Section 851 enhancement, the federal conspiracy was counted separate from the possession with intent to distribute conviction for purposes of enhancing the sentence under the 851 enhancement. This case is the same as Johnston. Here we have a limited duration offense. Happened on one day in 1996 resulting from a search warrant. They found seven grams of methamphetamine in his house. Now, the course of the federal conspiracy occurred over a 16 month time period. He was held accountable for 9.07 kilograms of methamphetamine. That conspiracy, if you read about it in the PSR for that particular offense, it wasn't limited to leg, cigarette, and alcohol distribution that was a part of that conspiracy. Mr. Melby was a distributor for the lead defendant in that case, a distributor of methamphetamine. As a part of the conspiracy, he was involved in breaking down and packaging methamphetamine. And he was also involved in strong arm tactics to force people to pay the lead conspirator for drugs that had been provided on a front. So it's the government's position that the facts of the federal conspiracy and the facts of the possession with intent to distribute show that they are separate conviction or they are separate distinct criminal episodes as required by the ACC, such that the district court properly found that they were both qualifiers in that respect. Now, going back to Vann and Johnston and the Johnston case, which was the Section 851 case, like I said, the court found that an overlapping conspiracy conviction with a possession with intent to distribute conviction within that counted as two predicate offenses to enhance the sentence for Section 851 purposes. This court has already said in Vann in 2008 that we can use the analysis in Johnston to reject a similar claim when it comes up under the ACC. In Vann, you had a defendant who had three drug convictions, three state drug convictions, and he was also convicted of a RICO count in state court. And in that appeal, the defendant tried to argue that because he had been convicted on that RICO count, he analogized that if he had been convicted on a conspiracy count, there's no way the court could have found that to be a predicate because the conspiracy would necessarily have to involve the three drug distributions as a continuing course of conduct as a part of that conspiracy. In this court, in the context of the ACC, just flat out rejected that, said it's not applicable. We've addressed this issue in Johnston, and although Johnston addresses a separate statute, we're going to apply it here to the ACC. And that's supported by the rationales behind both the ACC and the rationales for both of those laws are the same. We want to make sure that these are separate offenses before we enhance a person's statute or a person's sentence under that statute. So with respect to the Vann court applying Johnston as a part of the analysis for the ACC, it's the government's position that under Vann and Johnston, the defendant's argument doesn't fit with the case law of this court. And in the briefs, the defendant has also pointed out that in the PSR for the 1998 federal conspiracy conviction, the government stipulated as part of the negotiations that the possession with intent to distribute was a part of the offense conduct that occurred during the conspiracy. And on that basis, they've tried to argue that the government at that point said it's the same offense. The government's response to that argument is that the plea agreement that Mr. Melby pled to was a negotiated 120-month sentence. The decision to stipulate that the conduct from the 1996 conviction was a part of the 1998-1999 federal conspiracy conviction was made in the context of plea negotiations. It's also the government's position that under the case law, we don't look at how many trials there were, how many pleas there were, or how many convictions there were to determine if there's a And the facts of this case are that for the conspiracy conviction, he was involved in a 16-month conspiracy that was not merely limited to possessing methamphetamine. The quantity was much higher, 9 kilograms of methamphetamine versus 7 grams of methamphetamine for the possession with intent to distribute count. And that the facts of this case show that they are distinct criminal episodes for the purposes of enhancing the defendant's sentence under the ACC. If your honors don't have any further questions at this time, I would ask the court to affirm the judgment of the district court. Very well, thank you. Mr. Dickey, I believe you have a couple of minutes for rebuttal. Thank you. May it please the court. In determining the application of the armed career criminal enhancement to this case, it's this court's obligation to carry out the intent of Congress in passing that legislation. If you look to the cases in the Seventh Circuit, I think it's either the Kirkland case or the Elliott case, they do a pretty thorough analysis and review of the congressional intent behind the was to increase the punishment for serial offenders of violent crimes and drug offenses. In other words, an offender who commits a crime is caught or has at least the opportunity to stop, commits a second crime, can stop or is caught and then commits a third and has yet another opportunity to stop and continues on and then gets a subsequent firearm offense. And that's not what you have here with respect to the drug convictions because the actual possession with intent occurred on September 16th, which coincided with the end of his conspiracy. So in other words, it was in a situation where he was caught and then continued on in the conspiracy, which is what distinguishes this case from Johnston. And so it's important to look at the facts of Johnston because without that, the government essentially has no argument. What the opinion in the Johnston decision shows is that in October of 1990, he was caught with a possession charge. And then if you look at his federal conspiracy, the dates of that continued on until March of 1991. In other words, even though he got caught, he went back and continued on to participate for relevant conduct in that conspiracy, which is why those offenses would be in the Johnston case. So in effect, he was a continuous criminal in your view. And as far as these offenses were concerned, he never stopped what he was doing. There was no interval between any of these conduct? For Mr. Melby's case, that's correct. And that's by nature what a conspiracy is. I mean, at some point you have an agreement and then he carries out the overt act. In this case, the state offense was that very last act for which he was caught, unlike Johnston, who returned later and continued on in the conspiracy. So basically, it's your view again, once he started in this pattern of activity, there was nothing that distinguished the state court prosecution from the federal? Correct. Correct. So the conspiracy was ongoing. Ongoing conspiracy with no substantial interval of time? Correct. So in terms of the relevant conduct- Punctuated. No punctuated situation. Not within the conspiracy, as was the case in Johnston. There really wasn't any punctuation. It overlapped with the state court conviction, and essentially the government agreed in its federal prosecution. And then now they're essentially arguing, don't believe us when we make a representation during a plea negotiation. And so there's a little unfairness and lack of symmetry to that argument. You're too kind a person to say it, but it might be suggested that the government was piling on to this, on this fellow? No, you don't have to do it. I don't want to speculate as to what motivation is. As far as Mr. Melby's concerned, I suppose that might well be his attitude. Going into the whole prosecution, there was an agreement that it would be served concurrently based on the same offense conduct. I don't know why the subsequent federal prosecution two years later would have been necessary. What happened to the plea negotiations or is that irrelevant to what anything before us here today? I guess it is. It is relevant in this sense, in that in 1998 at least, the government took the position that they were essentially related conduct and won in the same, should be treated the same, should be sentenced the same. And then now when it comes time for the application of the ACCA, they're asking you to disregard the prior argument. And again, as you said, the congressional intent was to, the statute should be applied to those who commit one crime, go on, commit another one, but they are separate rather than part of a continuous course of conduct? Correct. And the quintessential, I guess, hypothetical would be an individual who goes in and burglarizes one apartment that contains five people and then goes through and takes the money out of each of their pockets. Arguably, he's committing five separate burglaries, but for the purpose of the ACCA, that's one episode and should be treated as one offense. And here we're dealing with different drug sales, are we not, which is not quite the same as your hypothetical? We're dealing with, with respect to the state court, we're dealing with at least the same drug offense, but a conspiracy by its nature and by the virtue of relevant conduct, you can look back to related conduct. Well, very well. We thank you for your argument. We thank the government for its presentation. The case is submitted and we will take it under consideration.